Brockenbrotjgi-i, J.
Several questions have been raised in this case. Was the levy of Wilson's elegit on M? Catty’s lands, and the delivery to him by the sheriff of one moiety of the lands at a reasonable extent, a satisfaction of the debt ? and if so, was Jackson, the warrantor of the debt, thereby discharged from all liability ?
The case of Crawley v. Lidgeat, Cro. Jac. 338. is a strong authority on the point. There, Bate and Crawley had been jointly and severally bound; judgment had been recovered against Bate, for £ 150. and an elegit sued out, and levied on his goods and lands; his goods to the value of £ 10. were taken in part satisfaction, and a moiety of his lands, to the value of £ 20. delivered to the creditor, in extent ; the plaintiff had also obtained judgment against Crawley, and sued out a ca. sa. against him; from which Crawley sought relief by audita querela: and Coke, O. J. said, the reasons yielded in the books, are, that after an elegit taken, the plaintiff shall not have a capias; that the taking of the land in extent for the debt, is, in judgment of law, as if he had taken a lease for years in satisfaction of the debt; and if he had taken satisfaction of the one, he never should take execution against the other: and the whole court thereupon decided that the execution against the body of Crawley was not well taken, and that he should be discharged. If such be the law as to joint and several obligors, who may each be sued at the same time, it is at least equally applicable to the case now before the court. Jackson was only collaterally bound: he guarantied that the debt should be paid by M’Cally. I waive the inquiry, whether the creditor was bound to proceed, in the first place, against the principal debtor: here, he selected his own remedy, and did so proceed. He chose to have delivered to him a moiety of the lands of the principal debtor, on an extent, for the debt, and his taking it is, according to the decision just cited, as if he had taken a lease for years in satis *105 faction. I am of opinion, that Jackson, the warrantor in this case, has at least as much right, as Crawley the joint and several obligor, to claim his discharge.
If the plaintiff should be evicted of the lands held by him by virtue of the extent, then by express provision of our statute, 1 Rev. Code, ch. 134. § 4. p. 257. he may take out any other execution; or he may, I presume, hold the defendant Jackson liable on his warranty. In this case, there has not been, as yet, any eviction; it being expressly agreed, that there was no final decree in the suit depending in the federal court at Clarksburg, deciding the rights of the different claimants to the land. That court may yet decree in Wilson’s favor.
It is stated, in the case agreed, that the actual possession of the land was not conferred on the plaintiff by the levy; and it is urged, that this legal possession is no satisfaction of the debt. On this point, however, the authorities are explicit and conclusive. In Puller’s Ni. Pri. 104. it is said, that an extent gives only a possession in law, and will not enable a sheriff to use force which may be necessary for the delivery of an actual possession: that a tenant by elegit has such an estate, that he may demise it to a plaintiff in ejectment: and the author shews what proof it will be necessary for him to produce, to maintain his ejectment; namely, a copy of the judgment, of the writ of elegit, and of the inquisition and return. And in 2 Wms. Saund. 69. c. note 3. Williams says, that it was formerly the practice for the sheriff to deliver actual possession of a moiety of the lands, but he now only delivers legal possession, and in order to obtain actual possession, the plaintiff must proceed by ejectment. Taylor v. Cole, 3 T. R. 295. Pennsylvania v. Kirkpatrick, Addison 203, M’Dougal v. Sitcher, 2 Johns. Rep. 42. 2 Wils. Bac. Abr. Execution. C. 2. p. 711. The reason why the sheriff is not required to give more than legal possession, is, that he may be compelled to use force, and that would endanger the public peace. The plaintiff, therefore, who elects to have the moiety of the lands at reasonable extent, must be contented to resort to the peace *106 ful remedy of ejectment, to obtain the actual possession. But, although he takes only the legal possession, he takes it in satisfaction of the debt; and that satisfaction begins to be effectual, I presume, as soon as by the obtention of the actual p0ssessi0n; he is let in to the pernancy of the profits. If, without any default of his own, he should fail to recover, in ejectment, the moiety of the lands of which the sheriff gave him the legal possession, I incline to think, that, upon the equity of the statute, he might then hold the warrantor liable, he being thereby deprived of actual satisfaction as much as if he had been evicted. But that point is not presented in this case, and I give no opinion upon it.
The last ground on which the appellant’s counsel proposes to reverse this judgment, is, that the case agreed is so imperfect that no judgment can be founded on it. The imperfection alleged consists in the omission to set out in the record, the warrant of distress issued by the comptroller of the U. States, and to state the date when it was served on M'Catty, or levied on the land. But of what avail, would that finding be, if inserted in the record? The greatest effect that could possibly be given to it, would be, that it operated as a lien on the land of M’Catty. The act of congress authorizing this distress warrant declares, that the amount due by the debtor shall be a lien on his lands from the date of a levy in pursuance of the warrant, and a record thereof made in the clerk’s office. Now, the effect of a levy of the warrant being only to create a lien, and not to divest the possession of the land, the plaintiff Wilson might well elect to have the land extended, subject to the incumbrance of the treasury hen: he might choose to take it with that hen, as well as to take it burdened with a mortgage, deed of trust, or any other incumbrance. I therefore think, that the imperfection of the case agreed is no ground for reversal; and, on the whole, I am for affirming the judgment.
Carr, J
It was admitted, in the argument, that before the statute 32 Hen. 8. ch. 5. from which the provision in our statute 1 Rev. Code, ch. 134. § 4. was taken, the levy and *107 return of an elegit was a satisfaction, and precluded the plaintiff from any further remedy: but it was said, that that statute has changed the nature and effect of the writ. I cannot assent to this proposition. The elegit was given by the statute of West. 2. under which the construction was, that an eviction of the land did not give the tenant any right to resort again to his debtor; and the statute of Hen. 8. merely corrected this injustice, thus far, that if tenant by elegit was evicted, he might, by a scire facias, have another elegit; but it went no further. Except in the single case of eviction, the levy of the elegit was as absolute a satisfaction as before. Even where there was an eviction of all but a single acre, the tenant had no other remedy, than holding that, till he was paid. That this is the law under the statute, there are numerous cases to shew: they are collected in the note 2 Wms. Saund. 68. c. The case of Crawley v. Lidgeat, Cro. Jac. 338. is directly in point. Our statute is a copy of that of 32 Hen. 8. with this amendment, that it does not confine the party to another elegit, but permits him to take out any execution: yet there must be an eviction, by judgment, of the land delivered to him, before he can in any way resort again to his debtor. Has there been an eviction here 1
The case is defectively stated in the case agreed; but enough is stated, to enable us to decide the point. The warrant of the comptroller of the treasury is stated to have been issued on the 23rd February 1822, but it is not in the record, nor does it appear when it was served. But I do not consider this material; because no such service could amount to an eviction, or change the property in the land, even if made prior to the levy of the elegit. The land still continued the property of the debtor, subject to the elegit; which being levied, the plaintiff must hold until there shall be a final judgment of a competent tribunal, condemning the land under the lien, which, by the act of congress, the service of the warrant of distress is said to create. Until such an eviction wrought, the tenant by elegit could never resort again to his original debtor, and still less to Jackson, who was a *108 surety. It is stated, in the case agreed, that the suit in the federal court was still pending, and that Wilson was a party to it, claiming the land under his elegit; and that court may finally decide, that his claim is the best, or it may turn ou^ tpe proceeds of the land may suffice to discharge both debts; in either of which cases, Wilson will get satisfaction of his claim out of M'Califs property. If he were now allowed to go against Jackson, the warrantor of the debt, he might get a double satisfaction.
It was said, that Wilson having no other possession than that which the inquest and return of the sheriff gave him, cannot be said to have been in, under the elegit. But all the cases contradict this idea. The sheriff never delivers actual possession. The party must bring ejectment, in all cases, if possession be held by another; yet, in all the cases, the return of the sheriff is considered as a satisfaction of the debt, unless the party be evicted. If he does not choose to enforce his rights, it is his own laches, and he can gain no advantage from it.
Brooke, J concurred. Judgment affirmed.